IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DALLAS COUNTY, ALABAMA,          :
et al.,                          :
                                 :
     Plaintiffs,                 :
                                 :
v.                               :          CIVIL ACTION 05-0350-M
                                 :
THE CITY OF SELMA, ALABAMA,      :
                                 :
     Defendant.                  :

MEMORANDUM OPINION AND ORDER

     This action comes before the Court on Plaintiffs' Motion for
Summary Judgment (Doc. 22) and Defendant's Motion for Summary
Judgment (Doc. 35).  Jurisdiction has been invoked in this Court
under 28 U.S.C. § 1331, pursuant to The Homeland Security Act of
2002, 6 U.S.C. § 101, The Telecommunications Act of 1996, 47
U.S.C. § 251,[1] the Fourteenth Amendment, 28 U.S.C. § 1343(3) and
42 U.S.C. § 1983 (Doc. 21).  The parties filed written consent
and this action has been referred to the undersigned Magistrate
Judge to conduct all proceedings and order the entry of judgment
in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see*
Doc. 17).  After consideration, Defendant's The City of Selma,
Alabama Motion for Summary Judgment is **GRANTED** to the extent that

_____

     [1]Though Plaintiffs have cited section 151 as the appropriate cite
for the Telecommunications Act, the Court believes that § 251 is the
actual starting point for this legislation.  *See, e.g., E. Spire
Communications, Inc. v. Baca*, 269 F.Supp.2d 1310, 1314 (D.N.M. 2003).

it seeks the dismissal of this action on the ground that this Court lacks jurisdiction to hear it; Defendant's Motion is **DENIED** as to any other assertion made (Doc. 35).  The Motion for Summary Judgment filed by Plaintiffs Dallas County, Alabama, Harris Huffman, Dallas County Communications District, Llewellyn R. Rollins, and Carl G. Allen is **DENIED** in its entirety (Doc. 22).

The facts, very briefly, are as follows.  Plaintiff Dallas County, Alabama (hereinafter *Dallas*)[2] is a corporate and political body which brought this action by its elected governing body, the Dallas County Commission (Doc. 22, ¶ 3; *see also* Doc. 47, ¶ 3).  Plaintiff Harris Huffman is a citizen and the Sheriff of Dallas County, Alabama (Doc. 22, Exhibit 4 [Huffman Aff.]., ¶ 1).  Plaintiff Dallas County Communications District is a corporate body organized pursuant to the provisions of Ala. Code §§ 11-98-1 to -2 (2005) (Doc. 22, ¶ 3; *see also* Doc. 47, ¶ 3).  Plaintiffs Llewellyn R. Rollins and Carl G. Allen are residents of Dallas County, Alabama, suing as individuals (Doc. 32, Exhibit 5 [Rollins Aff.], ¶ 2 and Exhibit 6 [Allen Aff.], ¶ 1).  Defendant City of Selma (hereinafter *Selma*) is a municipality organized under Alabama statutes (Doc. 22, ¶ 4; *see also* Doc. 47, ¶ 4).

In 2002, Congress passed The Homeland Security Act of 2002

---

[2]The Court will use *Dallas* in this Opinion to represent all Plaintiffs unless otherwise specifically stated.

2

which established the U.S. Department of Homeland Security and authorized the Secretary of that Department to coordinate with State and local government personnel to establish better communication networks in providing for a more secure homeland (Doc. 22, ¶ 5; *see also* Doc. 47, ¶ 5). 6 U.S.C. §§ 111, 112. In 2004, Congress established the Office for Interoperability and Compatibility and authorized it to establish federal grants to enhance public safety communications at all levels of government (Doc. 22, ¶ 6; *see also* Doc. 47, ¶ 6). 6 U.S.C. § 194.

The Alabama Legislature enacted the Alabama Homeland Security Act of 2003 which created the State Department of Homeland Security (hereinafter *SDHS*) for the purpose, *inter alia*, of receiving, distributing, and monitoring funds from any source for activities related to homeland security (Doc. 22, ¶ 7; *see also* Doc. 22, ¶ 7). Ala. Code § 31-9A-1 to -16. Brett H. Howard, Director of the Dallas County Department of Homeland Security and Emergency Management and member of the Dallas County E-911 Board, is the designated "point of contact" (hereinafter *POC*) between Dallas County and the SDHS (Doc. 22, Exhibit 2 [Howard Aff.], ¶ 2). Howard applied to SDHS for federal grant funds to acquire "bridging" equipment and a communications tower to be installed at the E-911 Center, located at 311 Dallas Avenue in Selma (*id.* ¶¶ 5-6), where "all law enforcement, fire and emergency communications for both the City of Selma and Dallas

County are handled" (Doc. 22, ¶ 7; *see also* Doc. 47, ¶ 7).  In February 2005, the SDHS allocated $75,000 to construct a communications tower (Doc. 22, Exhibit 2, ¶ 8 and Attachment C); the "Assistance Allocation Letter of Agreement" does not state a specific tower location though earlier correspondence from the SDHS to Howard stated that "it [was] essential for the communications tower [to] be located in close proximity of the 9-1-1 Center" (Doc. 22, Exhibit 2, Attachment A; *cf.* Attachment C).

Following the grant announcement, Selma's Mayor expressed disfavor with the proposed tower location and suggested that it be placed at the Selma Police Department (Doc. 22, ¶ 9; *see also* Doc. 22, ¶ 9).  On May 16, 2005, the Selma City Council adopted Resolution 163-04/05 which opposed the proposed tower location at the E-911 Center as being in violation of municipal laws because that building was in a Historic District;[3] the Resolution further expressed its preference for locating the tower at the Selma Police Department (*id.;* Doc. 22, Exhibit 2, Attachment E).

On June 13, 2005, Plaintiffs brought this action, seeking a declaratory judgment on ten issues related to the construction of the tower as well as injunctive and equitable relief (Doc. 1).

---

[3]On March 25, 2003, a "Historic Ordinance" took effect in Selma which prohibited the erection of any structure within a historic district without prior approval by the Selma Historic Development Commission; the Ordinance stated that this requirement applied "to all actions by public authorities which involve historic properties [] within historic districts" (Doc. 21, Exhibit 5 [Historic Ordinance], ¶¶ 12, 18).

Plaintiffs amended their complaint on August 9, 2005 to include two individual claimants, Allen and Rollins, and a claim on their behalf under 42 U.S.C. § 1983 (Doc. 21).  Simultaneous to filing the Amended Complaint, Plaintiffs filed a Motion for Summary Judgment (Doc. 22).  Defendant filed its own Motion for Summary Judgment and Response to Plaintiff's Motion (Docs. 35-36).  Plaintiffs then filed a Response/Reply (Doc. 39) to which Defendant has filed a Reply (Doc. 42).

The Rules of Civil Procedure, in discussing summary judgment, state that

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e); *see also Celotex Corporation v. Catrett*, 477 U.S. 317, 325-27 (1986).  The Court further bears in mind, with regard to the motions for summary judgment, that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

Summary judgment may be granted against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Id.*

The first issue to be decided is whether this Court has jurisdiction over this matter. Plaintiff has asserted that the subject matter of this action directly relates to federal law. Selma argues that it does not.

The U.S. Supreme Court "has repeatedly held that, in order for a claim to arise 'under the Constitution, laws, or treaties of the United States,' 'a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.'" *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127 (U.S. 1974) (quoting *Gully v. First National Bank in Meridian*, 299 U.S. 109, 112 (1936)). The Eleventh Circuit Court of Appeals has stated that

> [a] case arises under federal law if rights claimed by one party may be defeated by one construction of the statute and sustained by opposite construction, *Gully v. First National Bank of Meridian*, supra, 299 U.S. [109,] 112 []. Construction of a statute so as to sustain federal jurisdiction does not mean that the "case will necessarily turn upon an interpretation of the statute, but simply that the complaint must set forth a cause of action of which federal law is an essential ingredient, and which may, therefore, properly involve a construction of

that law."

*Hines v. Cenla Community Action Committee, Inc.*, 474 F.2d 1052, 1056 (11th Cir. 1973)[4] (quoting *McGoon v. Northern Pacific Railway Co.*, 204 F. 998, 1001 (D.C.N.D. 1913)).  The *Hines* Court went on to state that "when a controversy between the parties may be decided under local law without the necessity of interpreting a federal statute, there is no federal jurisdiction." *Hines*, 474 F.2d at 1056 (citing *Cabana Management, Inc. v. Hyatt Corp.*, 441 F.2d 862, 864 (5th Cir. 1971)).

The first asserted basis of jurisdiction is The Homeland Security Act of 2002 (hereinafter *HSA*), codified at 6 U.S.C. § 101, and the amendments thereto in the Intelligence Reform and Terrorism Prevention Act of 2004 (hereinafter *IRTPA*) (Pub.L. 108-458), codified at 50 U.S.C. § 401 (Doc. 22, pp. 3-4, ¶¶ 5-6). The Court notes at the outset that Dallas has not pointed to a specific provision of the Act which gives rise to a private cause of action.

The only provision which this Court found that gave rise to a cause of action was in HSA § 863 which provided "a Federal cause of action for claims arising out of, relating to, or resulting from an act of terrorism when qualified anti-terrorism

---

[4]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

technologies have been deployed in defense against or response or recovery from such act and such claims result or may result in loss to the Seller." 6 U.S.C. § 442(a).  This section is plainly not applicable here.  Likewise, this Court's search has revealed no case finding such a right.

Plaintiff has specifically referenced certain sections of HSA and IRTPA in asserting jurisdiction (Doc. 21, pp. 3-4; ¶¶ 5-6); this is where the Court will begin.  It is noted at the outset that the HSA established the Department of Homeland Security which was given the mission, *inter alia*, to prevent terrorist attacks and reduce the vulnerability of the U.S. to terrorism.  6 U.S.C. § 111.  The Department Secretary was ordered to coordinate with State and local government personnel in consolidating "the Federal Government's communications and systems of communications relating to homeland security."  6 U.S.C. 112(c)(2).  In the IRTPA, Congress granted the Secretary the authority to "establish an Office for Interoperability and Compatibility" to develop "appropriate minimum capabilities for communications interoperability for Federal, State, and local public safety agencies."  6 U.S.C. § 194(a)(1)(C) and (a)(2)(A).  Appropriations were made to enable the Secretary to perform that task as well as the authority to award "grants to any State, region, local government, or Indian tribe for the purpose of enhancing interoperable communication capabilities for emergency

8

response providers." 6 U.S.C. § 194(a)(3) and (e)(1). This grant program was enacted because Congress found that "many first responders working in the same jurisdiction . . . [could] not effectively and efficiently communicate with one another" which "threaten[ed] the public's safety and may result in unnecessary loss of lives and property." 6 U.S.C. § 194(i)(1)(A and B).

Since this is apparently a case of first impression, the Court will look to the U.S. Supreme Court for guidance "[i]n determining whether a private remedy is implicit in a statute not expressly providing one." *Cort v. Ash*, 422 U.S. 66, 78 (1975).[5] The *Cort* Court stated that courts should look at the following factors:

> First, is the plaintiff "one of the class for whose especial benefit the statute was enacted"–that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

---

[5]*Cort* has been overruled according to Justice Scalia, in *Thompson v. Thompson*, 484 U.S. 174, 189 (1988), in a concurring opinion: "It could not be plainer that we effectively overruled the *Cort v. Ash* analysis in *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575-576, 99 S.Ct. 2479, 2488-2489, 61 L.Ed.2d 82 (1979), and *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 18, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979), converting one of its four factors (congressional intent) into the determinative factor, with the other three merely indicative of its presence or absence."

This Court, nevertheless, will use *Cort* as a guideline for examination though understanding that congressional intent is the single determinative factor.

> And finally, is the cause of action one
> traditionally relegated to state law, in an
> area basically the concern of the States, so
> that it would be inappropriate to infer a
> cause of action based solely on federal law?

*Cort*, 422 U.S. at 78 (citations omitted).

As the Court has found no explicit cause of action in its reading of the HSA, the Court will focus on the implicit language of § 194.  The first *Cort* factor to consider is whether Plaintiff is "'one of the class for whose especial benefit the statute was enacted'–that is, does the statute create a federal right in favor of the plaintiff?"  The Court notes the text of § 194 names no particular class of people who are to benefit from this legislation.  Rather, the Court's reading of the statute is that it would benefit all of this Country's residents because better communications would exist throughout for all.  Although § 194 provides Plaintiff Dallas County Communications District with the opportunity to avail itself of the grants made available in subsection (e), this Court finds no hint of a cause of action within the language of the statute.  The Court finds that no federal right has been created in favor of any of the Plaintiffs on the basis of the first factor.

The second *Cort* factor to consider is whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?"  Plaintiffs have pointed to nothing more than the statute itself; this Court, independently,

has failed to find an indication that Congress intended to create a remedy in Plaintiffs.  The Court notes that this factor, according to Justice Scalia in *Thompson*, is the determinative one.  *Thompson*, 484 U.S. at 189.

The third *Cort* factor is a determination as to whether it is "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?"  After having read large portions of the Homeland Security Act of 2002 and the Intelligence Reform and Terrorism Prevention Act of 2004, this Court must answer this question in the negative.  While those Acts were substantial in terms of creating a new executive department which would be responsible for making the United States more secure, including the establishment of better communications networks for disseminating information, this Court finds that the overall import of the legislation was not to establish a new federal right.

The final *Cort* factor is whether "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?"  The Court understands the essence of this dispute, when stripped to its most basic form, to be two local, political entities who cannot agree where to put a communications tower.  The federal government, other than making the communications tower a

possibility, has no real interest in the dispute.[6]

After review of all of the *Cort* factors, the Court concludes that The Homeland Security Act of 2002 does not establish a private cause of action to Plaintiffs.  The Court expressly finds that Plaintiffs have failed to demonstrate a congressional intent to establish a private cause of action in this legislation or in the amendments thereto.  Therefore, this Court does not have jurisdiction pursuant to that Act.

The second asserted basis of jurisdiction is The Telecommunications Act of 1996, codified at 47 U.S.C. § 251. Plaintiffs referenced this Act, noting that Selma had passed an ordinance which was "adopted in accordance with provisions of the Telecommunications Act of 1996" (Doc. 22 Brief, p. 14 n.1).[7] Dallas argues that because Selma asserts that it has control over tower placement which impacts communications under the Homeland Security Act, there is "obvious existence of a federal question

---

[6]The Court notes that "[i]n legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 28 (1981) (no substantive rights created in the "bill of rights" provision of the Developmentally Disabled Assistance and Bill of Rights Act).

[7]On September 10, 2001, the Selma City Council adopted "A Local Ordinance Regulating the Siting of Wireless Telecommunications Facilities" (hereinafter *Tower Ordinance*) (Doc. 21, Exhibit 6).  The Tower Ordinance references—but does not cite—the Telecommunications Act of 1996 in its opening sentence and concludes by saying that it "is enacted pursuant to applicable authority granted by the State and federal government" (*id.* §§ 1, 34).

involving whether the Telecommunications Act was intended by Congress to enable local government to block Congressional intent as expressed under the Homeland Security Act and to prevent the implementation of interoperable communications as provided under the Homeland Security Act" (*id.*).  Again, however, the Court notes that Dallas has failed to point to a specific provision of the Act giving rise to a private cause of action.

The Court's search came across *Bellsouth Telecommunications, Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1175 (11th Cir. 2001), which discussed the Telecommunications Act and noted that its purpose was "to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." *Id.*, citing 110 Stat. at 56.  The *Bellsouth* Court discussed a provision of that Act, codified at 47 U.S.C. § 253,[8] and specifically held the

---

[8]Section 253, entitled "Removal of Barriers to Entry," states as follows:

> (a) No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.
>
> (b) Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this title, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

13

following:

> [A] private cause of action in federal
> district court exists under § 253 to seek
> preemption of a state or local statute,
> ordinance, or other regulation only when that
> statute, ordinance, or regulation purports to
> address the management of the public right-
> of-way, thereby potentially implicating
> subsection (c).  All other challenges brought
> under § 253 must be addressed to the FCC."

*Bellsouth*, 252 F.3d at 1191.  This Court does not understand subsection (c) to be pertinent to the claims raised in this action; to the extent that any of the balance of the statute[9] is applicable to the claims raised herein, Plaintiffs must seek their remedy before the Federal Communications Commission as

---

> (c) Nothing in this section affects the authority
> of a State or local government to manage the
> public rights-of-way or to require fair and
> reasonable compensation from telecommunications
> providers, on a competitively neutral and
> nondiscriminatory basis, for use of public
> rights-of-way on a nondiscriminatory basis, if
> the compensation required is publicly disclosed
> by such government.
>
> (d) If, after notice and an opportunity for
> public comment, the Commission determines that a
> State or local government has permitted or
> imposed any statute, regulation, or legal
> requirement that violates subsection (a) or (b)
> of this section, the Commission shall preempt the
> enforcement of such statute, regulation, or legal
> requirement to the extent necessary to correct
> such violation or inconsistency.

47 U.S.C.A. § 253.

[9]The Court notes that § 253 seems to be the most appropriate section of the Act to be considered.

there is no basis for jurisdiction in this Court.

Plaintiff has also asserted that Selma's Resolution 163-04/05 is "an affront to the Supremacy Clause" of the U.S. Constitution[10] because it "effectively blocked the construction of the communications tower" (Doc. 22 Brief, pp. 15-16).   Dallas further points to constitutional language which states that Congress has the power to, among other things, "provide for the common Defence and general Welfare of the United States".   U.S. Const. art. I, ¶ 8, cl. 1.   Though not clearly expressed, it appears that Plaintiff seeks preemption of the resolution, as well as the Historic and Tower Ordinances, by the HSA.   Under the Supremacy Clause, federal law controls local or State law. *Bosarge v. U.S. Dept. of Education*, 5 F.3d 1414, 1419 (11th Cir. 1993).

The Court has reviewed the Resolution and the two ordinances and finds that Plaintiff has not demonstrated a need to invoke the Supremacy Clause.   Specifically, while Selma has passed laws, as a normal, functioning municipality does, which regulate commerce and zoning, these ordinances provide only a speed bump—as opposed to a roadblock—in the placement of this communications tower.   The Court reads nothing in either

---

[10]"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."   U.S. Const. art. VI, cl. 2.

ordinance which prohibits the communications tower; they merely provide a process for its placement. Dallas, however, has candidly admitted that it has not availed itself of that process, asserting that such applications would be futile (Doc. 22 Brief, p. 18). The Court finds Plaintiff's argument non-persuasive.

Finally, Plaintiffs Allen and Rollins have brought claims under 42 U.S.C. § 1983 and the Fourteenth Amendment. More specifically, Plaintiffs asserted "that they are being denied the constitutional rights to due process and equal protection of the law in that they are particularly affected and aggrieved as citizens of Dallas County, Alabama, who reside within an area of Dallas County serviced by volunteer fire departments" (Doc. 22 Brief, p. 17). Because the volunteer fire departments must communicate with existing UHF antennas, there are occasions where there is no communication because of atmospheric conditions.[11]

Section 1983 states as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

---

[11]The Court acknowledges that this is a less-than-thorough explanation of this particular claim, but finds, nevertheless, that it suffices for purposes of this Order.

16

> equity, or other proper proceeding for
> redress.

42 U.S.C. § 1983 (1994).

The Court notes initially that Selma "'may only be held liable under Section 1983 if action pursuant to official . . . policy of some nature caused a constitutional tort.'" *Campbell v. Rainbow City, Ala.,* 434 F.3d 1306, 1312 (11th Cir. 2006) (quoting *Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002) (per curiam) (quoting *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir.1994))).  It is further noted that "only municipal officers or groups who have final policymaking authority may subject the municipality to § 1983 liability." *Id.*

"'[T]o seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Gonzaga University v. Doe*, 536 U.S. 273, 282 (2002) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in *Blessing*)).  "Section 1983 provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States.  Accordingly, it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section." *Gonzaga*, 536 U.S. at 283 (quoting § 1983).

The *Gonzaga* Court went on to explain what Courts should look for in determining whether § 1983 was an appropriate vehicle for

enforcing federal law.  The lengthy—though thorough—analysis is
as follows:

> We have recognized that whether a
> statutory violation may be enforced through §
> 1983 "is a different inquiry than that
> involved in determining whether a private
> right of action can be implied from a
> particular statute."  But the inquiries
> overlap in one meaningful respect–in either
> case we must first determine whether Congress
> intended to create a federal right.  Thus we
> have held that "[t]he question whether
> Congress . . . intended to create a private
> right of action [is] definitively answered in
> the negative" where a "statute by its terms
> grants no private rights to any identifiable
> class."  For a statute to create such private
> rights, its text must be "phrased in terms of
> the persons benefited" [sic]. . . . But even
> where a statute is phrased in such explicit
> rights-creating terms, a plaintiff suing
> under an implied right of action still must
> show that the statute manifests an intent "to
> create not just a private right but also a
> private remedy."
>
> Plaintiffs suing under § 1983 do not
> have the burden of showing an intent to
> create a private remedy because § 1983
> generally supplies a remedy for the
> vindication of rights secured by federal
> statutes.  Once a plaintiff demonstrates that
> a statute confers an individual right, the
> right is presumptively enforceable by §
> 1983.[12]  But the initial inquiry–determining
> whether a statute confers any right at all–is
> no different from the initial inquiry in an
> implied right of action case, the express

---

[12]The State may rebut this presumption by showing that Congress
"specifically foreclosed a remedy under § 1983."  The State's burden
is to demonstrate that Congress shut the door to private enforcement
either expressly, through "specific evidence from the statute
itself, or "impliedly, by creating a comprehensive enforcement scheme
that is incompatible with individual enforcement under § 1983."
*Gonzaga*, 536 U.S. at 284 n.4.

> purpose of which is to determine whether or
> not a statute "confer[s] rights on a
> particular class of persons."  This makes
> obvious sense, since § 1983 merely provides a
> mechanism for enforcing individual rights
> "secured" elsewhere, *i.e.*, rights
> independently "secured by the Constitution
> and laws" of the United States. "[O]ne cannot
> go into court and claim a 'violation of §
> 1983'-for § 1983 by itself does not protect
> anyone against anything."
>      A court's role in discerning whether
> personal rights exist in the § 1983 context
> should therefore not differ from its role in
> discerning whether personal rights exist in
> the implied right of action context.  Both
> inquiries simply require a determination as
> to whether or not Congress intended to confer
> individual rights upon a class of
> beneficiaries.  Accordingly, where the text
> and structure of a statute provide no
> indication that Congress intends to create
> new individual rights, there is no basis for
> a private suit, whether under § 1983 or under
> an implied right of action.

*Gonzaga*, 536 U.S. at 283-286.

The Court has already determined that the Homeland Security
Act of 2002, the Intelligence Reform and Terrorism Prevention Act
of 2004, and the Telecommunications Act of 1996 all fail to
create a private cause of action on the set of facts presented by
Plaintiffs.  Likewise, the Court finds nothing in those
statutes—and Plaintiffs have failed to demonstrate otherwise—that
indicate that Congress intended to create individual rights
through those statutes.  As such, § 1983 offers no cause of
action on the basis of these three statutes.

As noted earlier, though, Plaintiffs Allen and Rollins bring

this § 1983 claim pursuant to the Due Process and Equal
Protection clauses of the Fourteenth Amendment.  The pertinent
language is as follows:

> No State shall make or enforce any law which
> shall abridge the privileges or immunities of
> citizens of the United States; nor shall any
> State deprive any person of life, liberty, or
> property, without due process of law; nor
> deny to any person within its jurisdiction
> the equal protection of the laws.

U.S. Const. Amend XIV, § 1.

The Court notes that "[a]s a preliminary consideration,
federal courts should be disinclined to 'sit as a zoning board of
review,' and as a 'general rule,' zoning decisions 'will not
usually be found by a federal court to implicate constitutional
guarantees.'" *Campbell*, 434 F.3d at 1313 (quoting *Greenbriar
Village, L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1262
(11th Cir. 2003) (per curiam)).  To be successful in their
argument, "Plaintiffs must show (1) that they were treated
differently from other similarly situated individuals, and (2)
that Defendant unequally applied a facially neutral ordinance for
the purpose of discriminating against Plaintiffs." *Campbell*, 434
F.3d at 1314.

Plaintiffs Allen and Rollins have asserted that if the
communications tower does not go to the 911 Center, they—along
with other citizens—face the possibility of a failure of

communications during an emergency.  The Court has reviewed the
two ordinances, however, and finds them rationally related to
what municipalities do.  The Court further finds that the
ordinances have not been "applied" in a discriminatory manner; as
noted earlier, the ordinances were passed prior to—and from all
appearances, not in anticipation of—the factual situation
presented herein.

The Court finds that Plaintiffs' assertions, accepted as
true, demonstrate, at most, *de facto* discrimination in that city
residents fare better than county residents with regard to
emergency communications.  The Court, however, does not find that
this amounts to *de jure* discrimination.  Plaintiffs have not
demonstrated that they have been discriminated against on the
basis of their race,[13] alienage, or ancestry which would require
stricter scrutiny; it is not an issue of sexual discrimination
which would require intermediate scrutiny.  Likewise, Plaintiffs
have failed to show this Court that their interest in this matter
is a recognized fundamental interest requiring stricter scrutiny

_____

[13]Plaintiffs cited *Northeastern Florida Chapter of the Associated*
*General Contractors of America v. City of Jacksonville, Florida*, 508
U.S. 656 (1993) as support for their claim (Doc. 39, p. 12).  In
*Northeastern*, an association of general contractors sued the city on
the basis of the Equal Protection Clause, challenging an ordinance
which gave preferential treatment to minority-owned businesses in city
construction contracts.  *Northeastern*, 508 U.S. 656.
    The Court finds, however, that *Northeastern* is not instructive as
the facts of this action do not contemplate discrimination on the
basis of race.  Though Plaintiffs assert that a barrier has been
placed before them here, as in *Northeastern*, this Court finds the
similarity to end there.

of the municipal ordinances.[14]   The Court finds that Plaintiffs Allen and Rollins have failed to state an Equal Protection claim in this action as the Ordinances they challenge are rationally related to the task of a municipality.

Plaintiffs Allen and Rollins have also claimed that they were deprived of due process.  More specifically, they assert that being deprived of interoperable communications "may result in the unnecessary loss of their lives and property" (Doc. 21, ¶ 28).  In their brief supporting the Motion for Summary Judgment, Plaintiffs set out a factual predicate for their argument, but fail to point to any cases demonstrating the basis of their assertions (Doc. 22 Brief, pp. 17-18).  Likewise, the Conclusions of Law set out by Plaintiffs in their Statement of Undisputed Facts and Determinations of Law fail to inform this Court of the basis for their Due Process Clause assertion (Doc. 22, Facts/Law ¶¶ 38-56).

In Plaintiffs' Response/Reply, Allen and Rollins have pointed to a single case as support for their claim (Doc. 39, p. 10).  In *Gomez v. Florida State Employment Services*, 417 F.2d 569 (5th Cir. 1969), migratory farm workers were found to have

_____

[14]The Court acknowledges that these specific findings are general in nature and cite no specific case law for their conclusions.  The Court has, however, relied, in large measure on one treatise on the subject, finding it most beneficial in gaining a better understanding of this difficult constitutional protection.  *See* Chester James Antieau & William J. Rich, Modern Constitutional Law §§ 25.00 - 25.05 (2d ed. 1997 & Supp. 2006).  The Court notes that no party contributed much to this discussion.

standing to seek remedies for deprivations of certain wages and conditions of employment as guaranteed by the Wagner-Peyser National Employment System Act.  In that action, though, standing was found on the basis of the Wagner-Peyser Act with no remedy provided on the basis of the Fourteenth Amendment.  As this Court has already found that the Homeland Security Act, the Intelligence Reform and Terrorism Prevention Act of 2004, and the Telecommunications Act of 1996 all fail to create a private cause of action, the Court finds no further instruction in *Gomez*.  The Court finds that Plaintiffs Allen and Rollins have failed to demonstrate that this Court has jurisdiction under the Due Process Clause.

In conclusion, Plaintiffs have failed to convince this Court that it has jurisdiction over any of the claims asserted in this action.  The Court has explored each particular claim and found it wanting.  The Court finds that this matter is, essentially, a local matter which should be resolved through principles of State law.  The facts of this action do not give rise to federal jurisdiction.

Therefore, Defendant's The City of Selma, Alabama Motion for Summary Judgment is **GRANTED** to the extent that it seeks the dismissal of this action on the ground that this Court lacks jurisdiction to hear it; since this Court lacks jurisdiction, Defendant's Motion is **DENIED** as to any other assertion made (Doc.

35).  For the same reason, namely, the lack of jurisdiction, the

Motion for Summary Judgment filed by Plaintiffs Dallas County,

Alabama, Harris Huffman, Dallas County Communications District,

Llewellyn R. Rollins, and Carl G. Allen is **DENIED** in its entirety

(Doc. 22).

DONE this 24th day of February, 2006.


s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE